# United States Court of Appeals
## For the First Circuit

No. 14-2357

ANTHONY MCKAY WHYTE,

Petitioner,

v.

LORETTA E. LYNCH,*
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Virginia Benzan, pro bono, Suffolk University Law School, Immigration Clinic, was on brief, for petitioner.
Anthony W. Norwood, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom Lisa Morinelli, Attorney, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Greg D. Mack, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.
Sejal Zota, on brief for the National Immigration Project of the National Lawyers Guild and the Immigrant Defense Project, as amicus curiae in support of petitioner.

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr., as the respondent.

December 9, 2015

**KAYATTA, <u>Circuit Judge</u>.** Permanent resident non-citizens such as petitioner Anthony Whyte are removable under United States immigration laws if they are convicted of an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes any offense defined in 18 U.S.C. § 16 as a "crime of violence," for which the term of imprisonment is at least one year. <u>See</u> 8 U.S.C. § 1101(a)(43)(F). Because Whyte was convicted in 1999 of third-degree assault under a Connecticut statute, Conn. Gen. Stat. § 53a-61(a)(1), the Board of Immigrations Appeals ("BIA") ordered his removal, reasoning that the Connecticut offense was categorically a crime of violence, and thus was necessarily an "aggravated felony." Resolving an issue left undecided in our recent decision in <u>Villanueva</u> v. <u>Holder</u>, 784 F.3d 51, 55 (1st Cir. 2015), we join the Second Circuit Court of Appeals, <u>Chrzanoski</u> v. <u>Ashcroft</u>, 327 F.3d 188 (2d Cir. 2003), in holding that third-degree assault as defined by Connecticut law does not require proof of all of the required elements of a "crime of violence." In light of this holding, Whyte's conviction for that offense, standing by itself, does not constitute proof that he has been convicted of an aggravated felony calling for his removal. We therefore grant his petition to vacate the removal order.

Anthony McKay Whyte, a citizen of Jamaica, was admitted to the United States as a permanent resident in 1981. The Department of Homeland Security ("DHS") first placed Whyte in removal proceedings in March 2012 in Boston on the basis of a 2011 conviction for selling marijuana in Connecticut. An immigration judge found him removable in May 2012. Whyte subsequently lost both his BIA appeal of that decision and a motion to reconsider. During his subsequent petition to this court, the U.S. Supreme Court decided Moncrieffe v. Holder, 133 S. Ct. 1678 (2013), holding that "[i]f a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana, the conviction is not for an aggravated felony under the [Immigration and Nationality Act ('INA')]," id. at 1693–94. At the government's request, we therefore remanded Whyte's case back to the BIA to reassess the case in light of the Supreme Court's ruling.

On remand, DHS amended its notice of removal against Whyte. DHS replaced the 2011 marijuana distribution offense with Whyte's 1999 conviction for assault in the third-degree under section 53a-61(a)(1) of the Connecticut criminal code, for which Whyte received a prison sentence of one year, suspended after 45 days, and three years of probation. In an oral decision at the close of a removal hearing, the immigration judge found Whyte

removable as charged, relying on an earlier BIA decision ruling that third-degree assault under Connecticut law qualified as a "crime of violence" under 18 U.S.C. § 16(a). In re Martin, 23 I. & N. Dec. 491, 499 (BIA 2002) (en banc). In a timely appeal to the BIA, Whyte pointed out that the Second Circuit had expressly overruled In re Martin in 2003, finding that third-degree assault under Connecticut law is not a "crime of violence." Chrzanoski, 327 F.3d at 196–97. Agreeing that Chrzanoski had reversed the agency's interpretation in the Second Circuit, the BIA nevertheless observed that Chrzanoski did not control in this circuit. Reviewing the immigration judge's legal conclusions de novo, the BIA held that "[w]hile subsequent Supreme Court and Board decisions have endeavored to more precisely define the mens rea and the term 'physical force' required for determining a crime of violence under 18 U.S.C. § 16(a) since Matter of Martin . . . they do not change our holding in Martin and the outcome of the instant case." Whyte's BIA appeal was dismissed and this petition was undertaken.[1]

---

[1] Whyte argues that in issuing a Notice to Appear at an immigration court in Boston as opposed to Connecticut (where he resides) the government engaged in impermissible forum shopping to escape adverse precedent in the Second Circuit. In view of our independent decision in accord with Chrzanoski and the fact that immigration officials commenced the removal proceedings in Boston when the marijuana offense was serving as the sole basis for removal, we need not decide this forum-shopping issue.

Noncitizens who are convicted of an "aggravated felony" after admission into the United States are removable. 8 U.S.C. § 1227(a)(2)(A)(iii). Such individuals are also statutorily ineligible for discretionary forms of relief from removal, such as asylum or cancellation based on their established, lawful presence in the United States. See Moncrieffe, 133 S. Ct. at 1682 (citing 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); §§ 1229b(a)(3), (b)(1)(C)). Elsewhere in the Code, "aggravated felony" is defined as, inter alia, "a crime of violence . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F).[2]

In this case we are, yet again, asked to determine whether an individual convicted under a given state law is guilty of a "crime of violence," as defined by Congress. Rather than draw up a master list of offenses that would meet this definition or task an administrative agency with determining which state crimes are "violent," Congress requires that we measure each state offense we meet against a two-part test defining a "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical

---

[2] The fact that all but 45 days of Whyte's one-year sentence was suspended does not affect his vulnerability to removal under section 16. See 8 U.S.C. § 1101(a)(48)(B) ("Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension . . . .").

force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.  The parties agree that Whyte's offense was not a felony, so we need only concern ourselves with subsection (a).

**A.**

"Whether a prior conviction is a qualifying offense under section 16 is a question of law that we review de novo." United States v. Fish, 758 F.3d 1, 4 (1st Cir. 2014) (citing Aguiar v. Gonzáles, 438 F.3d 86, 88 (1st Cir. 2006)).  In this posture, our review is focused on the decision promulgated by the BIA, not the earlier decision of the immigration judge.  Vásquez v. Holder, 635 F.3d 563, 565 (1st Cir. 2011).  While "[w]e afford deference to the BIA's reasonable interpretations of the INA," we do not defer to "its reading of an underlying criminal statute (as to which it has no expertise)."  Patel v. Holder, 707 F.3d 77, 79 (1st Cir. 2013).

In part because "[e]ach state defines its own crimes, generally without reference to (and often, we presume, without knowledge of) the section 16 definitions," a flood of appellate ink has been poured in attempts to classify various state laws under this federal statute.  Fish, 758 F.3d at 4.  Nor do the results of these assays always align with expectations intuited

from the names or apparent seriousness of the state offenses. Thus, a state misdemeanor conviction can qualify as a federal "aggravated felony," see United States v. Cordoza-Estrada, 385 F.3d 56, 58–59 (1st Cir. 2004) (per curiam) (noting the statute's semantic oddities but joining the majority of other circuits in reading the law literally), while a crime captioned "assault and battery with a deadly weapon" can fail to qualify as one that has the mens rea required of a "crime of violence," Fish, 758 F.3d at 8–10.

An additional complication is introduced by Congress's repeated, overlapping use of the phrase "crime of violence" in other statutes such as the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(g)(4), the Domestic Violence Offender Gun Ban, 18 U.S.C. § 922(g)(9) (referring to a "crime of domestic violence"), and the United States Sentencing Guidelines, U.S.S.G. § 2L1.2. The appellate landscape interpreting these provisions is equally daunting. Compare, e.g., United States v. Cruz-Rodriguez, 625 F.3d 274, 277 (5th Cir. 2010) (per curiam) (conviction under California statute punishing the making of a criminal threat not a "crime of violence" under the Sentencing Guidelines); with United States v. Villavicencio-Burruel, 608 F.3d 556, 563 (9th Cir. 2010) (exactly the opposite).

We have previously explained in detail how we navigate this landscape to figure out whether a specific conviction

qualifies as a crime of violence under section 16.  See Fish, 758 F.3d at 4-7.  In a nutshell, without reference to the underlying facts of a state conviction, "we compare the elements of the crime for which the defendant was previously convicted with Congress's definition of the type of crime that may serve as a predicate offense."  Id. at 5.

Sometimes the state law that we examine sets forth alternative versions of an offense, at least one of which satisfies section 16's definition of a crime of violence, and at least one of which does not.  In such a circumstance, we look at any so-called Shepard documents that are presented to see if we can determine the version of the offense of which the person was convicted.  See Shepard v. United States, 544 U.S. 13, 17 (2005).  The "limited class" of documents available to us in performing this task includes documents "such as indictments and jury instructions."  Fish, 758 F.3d at 6 (quoting Descamps v. United States, 133 S. Ct. 2276, 2281 (2013)).

Finally, in conducting our analysis of state law, we are mindful that courts are not to rely solely on their "legal imagination" in positing what minimum conduct could hypothetically support a conviction under that law.  Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007).  There must be "a realistic probability, not a theoretical possibility, that the State would apply its statute" in the manner posited by the reviewing court.  Id.

**B.**

Whether third-degree assault as defined by Connecticut law, Conn. Gen. Stat. § 53a-61, describes a "crime of violence" under section 16(a) is a question of first impression in our circuit.[3]  We begin with the text of the Connecticut law:

> (a) A person is guilty of assault in the third degree when:
>     (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or
>     (2) he recklessly causes serious physical injury to another person; or
>     (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.
> (b) Assault in the third degree is a class A misdemeanor and any person found guilty under subdivision (3) of subsection (a) of this section shall be sentenced to a term of imprisonment of one year which may not be suspended or reduced.

Conn. Gen. Stat. § 53a–61.

Whyte pled nolo contendere to violating section (a)(1) of the state statute.[4]  We therefore confine our review to this

---

[3] We have previously characterized this statute as actually prohibiting "a form of battery," not assault, since it requires a showing of physical injury. Campos-Gomez v. Mukasey, 298 F. App'x 22, 24 n.3 (1st Cir. 2008).

[4] Whyte's nolo contendere plea is considered a conviction for purposes of immigration law. See 8 U.S.C. § 1101(a)(48)(A) (formal judgment of guilt is not required when "a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere" and some form of penalty has been imposed)(emphasis supplied)).

- 10 -

prong of the state law. Because subsection (a)(1) requires "intent," as opposed to recklessness or negligence, it satisfies the mens rea criterion of section 16(a). See Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) ("The key phrase in § 16(a)--the 'use . . . of physical force against the person or property of another'--most naturally suggests a higher degree of intent than negligent or merely accidental conduct.").[5]

For Whyte's conviction to qualify as a "crime of violence," we must also find that a conviction under subsection (a)(1) requires, "as an element, the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). The parties agree that "physical force" should here be understood to mean "violent force--that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010). Although Johnson concerned the meaning of the term "physical force" in the context of the Armed Career Criminal Act, the language at issue is identical to that found in section 16(a) and we have previously extended Johnson's interpretive gloss to section 16(a).

---

[5] Our finding on this subsidiary point is in some tension with the Second Circuit's approach in Chrzanoski. In that case the court ruled that because "the subsections under section 53a-61(a) differ only on the mens rea requirement, the precise subsection under which petitioner was convicted is not relevant." Chrzanoski, 327 F.3d at 192. This minor point of departure can be explained by the fact that Chrzanoski predated the Supreme Court's guidance in Leocal.

- 11 -

See Fish, 758 F.3d at 9 ("[W]e see no reason to think the same would not apply to the same phrase in section 16(a)"). This accords with the BIA's interpretation of "physical force" as used in section 16(a). See In re Velasquez, 25 I. & N. Dec. 278, 282 (BIA 2010). So, to be more precise, in order to uphold the BIA's decision we would need to find that subsection (a)(1) of the Connecticut statute requires the use, attempted use, or threatened use of "violent force" as a necessary element of conviction.

The elements of a crime may be defined by statute, e.g., Conn. Gen. Stat. § 53a–101, or by case law, e.g., Efstathiadis v. Holder, 119 A.3d 522 (Conn. 2015) (discussing the elements of Conn. Gen. Stat. Ann. § 53a-73a). The plain text of subsection (a)(1) of the Connecticut assault statute identifies only two elements: (i) the "intent to cause physical injury to another person" and (ii) "caus[ing] such injury to such person or to a third person." Conn. Gen. Stat. § 53a–61(a)(1). Missing from this text is any indication that the offense also requires the use, threatened use, or attempted use of "violent force." The text thus speaks to the "who" and the "what" of the offense, but not the "how," other than requiring "intent." In sum, to the extent that the plain language of the statute controls the definition of the crime, the crime does not contain as a necessary element the use, attempted use, or threatened use of violent force.

Confronted with this lexical gap, the BIA looked to pronouncements of Connecticut courts for further guidance as to how the state defines the crime. See Lopes v. Keisler, 505 F.3d 58, 62 (1st Cir. 2007). Nothing in these pronouncements fills in the gap by indicating that violent force need be employed to cause the injury. To the contrary, the Connecticut Supreme Court has stated that, under subsection (a)(1), the state is required "to prove that the defendant had intentionally caused physical injury." State v. Tanzella, 628 A.2d 973, 980 (Conn. 1993). Similarly, Connecticut's model jury instructions for intentional third-degree assault emphasize that the statute has two elements: that the defendant "intended to cause physical injury" and that the defendant "caused physical injury." State of Connecticut Judicial Branch, Criminal Jury Instructions, 6.1-13 Assault in the Third Degree (Physical Injury) -- § 53a-61 (a) (1), http://www.jud.state.ct.us/ji/criminal/part6/6.1-13.htm (last revised Dec. 1, 2007). "Physical injury," the instructions state, "is defined as impairment of physical condition or pain. It is a reduced ability to act as one would otherwise have acted. The law does not require that the injury be serious. It may be minor." Id. See also Conn. Gen. Stat. § 53a-3(3) (defining "physical injury" as "impairment of physical condition or pain").

The government points to no Connecticut authority that even suggests that Connecticut has interpreted this statute to

include the use of violent force as an element. Nor have we found authority to that effect. Common sense, moreover, suggests there exists a "realistic probability" that, under this statute, Connecticut can punish conduct that results in "physical injury" but does not require the "use of physical force." Gonzales, 549 U.S. at 193; see Chrzanoski, 327 F.3d at 196 (subsection (a)(1)'s "language is broad enough to cover myriad other schemes, not involving force, whereby physical injury can be caused intentionally"). For example, a person could intentionally cause physical injury by "telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim." United States v. Villegas-Hernandez, 468 F.3d 874, 879 (5th Cir. 2006) (holding that a similar Texas statute did not satisfy 16(a)'s definition of violent crime).

Of course, in Fish, when we approached an analogous question under Massachusetts law--was intent to injure an element of the crime--we were able to answer that question by relying, in part, on a Massachusetts case holding that proof of mere recklessness was sufficient for conviction. See Fish, 758 F.3d at 10 (discussing Commonwealth v. Burno, 487 N.E.2d 1366, 1368–69 (Mass. 1986)). Here, Whyte can point to no Connecticut case in which an assault conviction was sustained in the absence of violent force. The absence of such a case, says the government, means

- 14 -

that violent force is required.  The problem with this argument is that while finding a case on point can be telling, not finding a case on point is much less so.  This logic applies with particular force because prosecutions in Connecticut for assault have apparently not generated available records or other evidence that might allow us to infer from mere observation or survey the elements of the offense in practice.  See Peter M. Brien, Bureau of Justice Statistics, U.S. Dep't of Justice, Improving Access to and Integrity of Criminal History Records 9 (2005) (discussing the "extensive problem" of state criminal record databases lacking information regarding disposition).

Undaunted by the dry well it dug in Connecticut law, the BIA, in In re Martin, turned to the legislative history of section 16(a) itself in the form of a sentence in a United States Senate Judiciary Committee report stating that a "crime of violence" would "include a threatened or attempted simple assault."  S. Rep. No. 98-225, at 307 (1983); see Martin, 23 I. & N. Dec. at 494.  In Chrzanoski, the Second Circuit adequately debunked the BIA's over-reading of this language in the legislative history, 327 F.3d at 196, and perhaps that is why the government chose not to advance that theory to us.

In this case, the government instead points to our decision in United States v. Nason, 269 F.3d 10 (1st Cir. 2001).  Nason addressed the interaction between the Domestic Violence

Offender Gun Ban, 18 U.S.C. § 922(g)(9), and Maine's general-purpose assault statute, Me. Rev. Stat. Ann. tit. 17-A, § 207(1). Under the federal law, an individual convicted of a "misdemeanor crime of domestic violence" cannot lawfully own a firearm. 18 U.S.C. § 922(g)(9). The statute defines a "misdemeanor crime of domestic violence," in relevant part, as one that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." 18 U.S.C. § 921(a)(33)(A)(ii).

In relevant part, the Maine assault statute states that "[a] person is guilty of assault" if that person "intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another." Me. Rev. Stat. Ann. tit. 17-A, § 207(1). Like the Connecticut statute, the "bodily injury" prong of the Maine law does not specify how bodily injury has to be caused or the kind of "force" (if any) a defendant has to employ in order to be convicted. We nevertheless reasoned in Nason that "to cause physical injury, force necessarily must be physical in nature." Nason, 269 F.3d at 20 (emphasis omitted). Thus, conviction under the Maine assault statute served as a valid predicate under the Domestic Violence Offender Gun Ban.

So, says the government, if the element of "causing physical injury" implies an additional element under Maine law that physical force be employed to cause the injury, then the element of "caus[ing] physical injury" under Connecticut's assault

- 16 -

statute similarly implies an added element that physical force be used to cause the injury.

The flaw in this argument is the assumption that the federal statutory scheme at issue in Nason and the one in section 16 before us now are, in relevant part, sufficiently identical so as to render compelling any reasoning employed in Nason. More specifically, the government assumes that "the use or attempted use of physical force" has the same meaning when it appears in the Domestic Violence Offender Gun Ban, 18 U.S.C. § 921(a)(33)(A)(ii), and in the Code's generic definition of a "crime of violence," id. § 16(a). That premise is undermined by the Supreme Court's rulings in United States v. Castleman, 134 S. Ct. 1405 (2014), and Johnson, 559 U.S. 133.

"Physical force" can mean different things depending on the context in which it appears. Johnson, 559 U.S. at 139 ("Ultimately, context determines meaning."). In Johnson, the Supreme Court ruled that the statutory element of "force" in the ACCA should not be automatically understood to have its common law definition of being "satisfied by even the slightest offensive touching." Id. (citing 3 W. Blackstone, Commentaries on the Laws of England 120 (1768)). Instead, statutory context matters: the use to which the statutory definition is put informs the definition itself. As used in the ACCA, the phrase "physical force" defined the term "violent felony." See 18 U.S.C. § 924(e)(2)(B). In such

a context, the Court ruled, "the phrase 'physical force' means violent force--that is, force capable of causing physical pain or injury to another person." Johnson, 559 U.S. at 140.

In Castleman, reviewing the same language in a different statute, the Court ruled that statutory context compelled the opposite meaning: here, Congress intended the phrase to have its common law meaning. 134 S. Ct. at 1410. As in Nason, the federal statute at issue was the Domestic Violence Gun Offender Ban. "Domestic violence," the Court ruled, is a "term of art" that "encompasses a range of force broader than that which constitutes 'violence' simpliciter," including "acts that might not constitute 'violence' in a nondomestic context." Id. at 1411 & n.4. Distinguishing Johnson, the Court noted that it would be no "anomaly" for individuals convicted of simple battery against a domestic partner to be branded "domestic violence offenders," whereas treating individuals convicted of non-violent offenses as "armed career criminals" would not comport with the phrase's ordinary meaning. Id. at 1412. "Physical force" within the meaning of the Domestic Violence Gun Offender Ban can thus be satisfied by a "mere offensive touching"--a standard that casts a far wider net in the sea of state crime predicates than does Johnson's requirement of "violent force."[6] Id. at 1413; see also

---

[6] Castleman itself was careful to state that its holding was confined to section 922(g)(9) and should not be interpreted to

United States v. Voisine, 778 F.3d 176, 181 (1st Cir.), cert. granted in part, No. 14-10154, 2015 WL 3614365 (U.S. Oct. 30, 2015) (explaining why section 16(a) is not analogous to section 922(g)(9)).

The dichotomy between these two statutes resolves the question of Nason's relevance. Though the same language can be found in the Domestic Violence Gun Offender Ban and the generic definition of "crime of violence" in the U.S. Code, the two statutes serve different purposes and are doing different work. We thus reason our way through their respective puzzlements differently. While Nason's interpretive approach may be appropriate in the context of the more capacious, common law meaning of "physical force" embodied in the Domestic Violence Gun Offender Ban, we decline to split with the Second Circuit by extending such an approach to section 16, which we see as requiring "violent force."[7]

We therefore return, as we must, to the plain language of the statute, to the lack of any Connecticut authority detracting from the force of this plain language, and to our own common sense

_____

"cast[] doubt" on decisions ruling that more than a "mere offensive touching" is required to constitute "physical force" under section 16. Castleman, 134 S. Ct. at 1411 n.4.

[7] Indeed, in Castleman, the Supreme Court cited Nason as typical of court of appeals decisions predating it that had interpreted physical force to mean "any physical force." Castleman, 134 S. Ct. at 1410 (quoting Nason, 269 F.3d at 18).

- 19 -

in understanding the conduct that Connecticut has sought to criminalize.  All point us to the same conclusion reached by our sister circuit in <u>Chrzanoski</u>: third-degree assault in Connecticut does not require as an element the use, attempted use, or threatened use of violent force, is therefore not a "crime of violence" under section 16(a), and is therefore not an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii) and § 1101(a)(43)(F).

### III.

We <u>grant</u> Whyte's petition for review, <u>vacate</u> the BIA's decision in this matter, and <u>remand</u> to the agency for further action consistent with this opinion.