UNITED STATES of America,
Plaintiff,

v.

Jorge BAEZ–MARTINEZ, Defendant.

CRIMINAL NO. 12–281 (JAG)

United States District Court,
D. Puerto Rico.

Signed 06/29/2017

Joannie Plaza–Martinez, Federal Public Defender's Office, Patio Gallery Building, 241 Franklin D. Roosevelt Ave., Hato Rey, PR 00918–2441, Franco Lorenzo Perez–Redondo, Federal Public Defender's Office, Patio Gallery Building, 241 Franklin D. Roosevelt Ave., Hato Rey, PR 00918–2441, for Plaintiff.

Max J. Perez–Bouret, United States Attorney's Office, District of Puerto Rico, Torre Chardon, Suite 1201, 350 Chardon Ave., San Juan, PR 00918, Susan Zetta Jorgensen, United States Attorney's Office, District of Puerto Rico, Torre Chardon, Suite 1201, 350 Chardon Ave., San Juan, PR 00918, for Defendant.

### OPINION AND ORDER

GARCIA–GREGORY, United States District Judge

This case asks a seemingly easy question: are murder and attempted murder

violent felonies that require the "use, attempted use, or threatened use of physical force." However, the legal analysis of this question turns out to be more complicated and convoluted than common sense would dictate. Nonetheless, this tortuous analysis leads to the same conclusion that general principles of logic and common sense would reach: murder and attempted murder are violent felonies. Thus, Defendant must be re-sentenced to at the very least a fifteen-year mandatory minimum.

## BACKGROUND

Defendant Jorge Baez–Martinez ("Defendant") was convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Docket No. 58. The pre-sentence report investigation stated that Defendant was subject to the enhanced penalty of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e)(1), based on his criminal history. Docket No. 78. Accordingly, Defendant was sentenced to the fifteen-year mandatory minimum. Docket No. 80.

Defendant appealed his conviction without raising any issues as to his sentencing, and the First Circuit affirmed his conviction on May 13, 2015. Docket No. 92. However, shortly thereafter, the Supreme Court declared the residual clause of the ACCA unconstitutionally vague. *See Johnson v. United States,* — U.S. —, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) (*"Johnson II"*). Thus, Defendant petitioned for a Writ of Certiorari, and the Supreme Court vacated the First Circuit's judgment and remanded the case to the First Circuit for further consideration in light of *Johnson*

*II.* Docket No. 94. The First Circuit, in turn, remanded the case to this Court for re-sentencing. *Id.*

Defendant has a lengthy criminal history, which includes convictions for second degree murder, attempted murder, robbery, and kidnapping, all under Puerto Rico law. Docket No. 68. Defendant filed a memorandum in support of his objections to the pre-sentence report, arguing that he should be re-sentenced without the ACCA enhancement, because these crimes do not constitute ACCA predicate offenses under the statute's force clause. Docket No. 104–1.[1] The Government responded, arguing that these crimes are ACCA predicates. Docket No. 123. Defendant replied. Docket No. 128.

## ANALYSIS

The issue here is whether Defendant is subject to a fifteen-year mandatory minimum sentence under the ACCA. This question turns on whether Defendant has been convicted of three "violent felonies" under the ACCA's force clause. The Court holds that he has.

The Court begins by providing the relevant framework to determine if a crime constitutes a "violent felony" under the ACCA's force clause. In applying this framework, the Court then concludes that, under Puerto Rico law, second degree murder and attempted murder do constitute "violent felonies." Since Defendant has two convictions for attempted murder and one for second degree murder, Docket No. 68, the Court finds that he has three convictions for ACCA predicate offenses.

---

1. Defendant filed a new set of objections to the pre-sentence report, with an adjoining memorandum, on March 9, 2017, Docket Nos. 134, 135, to "replace and/or eliminate citations to cases that have not been officially translated by the Puerto Rico Supreme Court," Docket No. 135. However, as Defen-

dant states, the more recent memorandum "contains no new substantive arguments or objections." *Id.* Thus, the Court uses Defendant's first memorandum to characterize his arguments, since the Government responded to this one.

Accordingly, Defendant must be re-sentenced to the mandatory minimum and the Court need not consider if Defendant's other convictions constitute ACCA predicates.

## I. The ACCA Violent Felony Framework

The ACCA provides a fifteen-year mandatory minimum sentence for criminal defendants who have three previous convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). The ACCA defines a "violent felony" as any crime punishable by imprisonment of over one year, that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"—the force clause—(2) is "burglary, arson, or extortion, involves use of explosives"—the enumerated offenses clause—or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another"—the residual clause. *Id.* at § 924(e)(2)(B). The residual clause was declared unconstitutionally vague by the Supreme Court in *Johnson II*, 135 S.Ct. at 2563, and this case does not involve any enumerated offense. Thus, this case only deals with the force clause.

To determine whether a prior crime is an ACCA predicate offense, courts use the "categorical approach," in which courts "look[ ] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607

(1990). In applying the force clause, the Supreme Court has defined physical force as "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) ("*Johnson I*").[2] Thus, if all the conduct covered by a statute categorically requires violent force capable of causing physical injury, then that statute is an ACCA predicate offense. *See United States v. Faust*, 853 F.3d 39, 51 (1st Cir. 2017). In determining the minimum conduct covered by a statute, courts should not rely solely on "their 'legal imagination.'" *Whyte v. Lynch*, 807 F.3d 463, 467 (1st Cir. 2015), *reh'g denied*, 815 F.3d 92 (1st Cir. 2016) (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)). "There must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute' in the manner posited by the reviewing court.'" *Id.* (quoting *Gonzales*, 549 U.S. at 193, 127 S.Ct. 815).

If a statute does not qualify as a violent felony under the categorical approach, then a court must determine if it is divisible. *Descamps v. United States*, 570 U.S. 254, 133 S.Ct. 2276, 2281, 186 L.Ed.2d 438 (2013). However, since the Court concludes that the relevant crimes here are categorically ACCA predicate offenses, the Court need not engage in this analysis.

## II. Puerto Rico Second Degree Murder

Defendant has a prior conviction for second degree murder under Puerto Rico law.

---

**2.** The force clause at issue here, 18 U.S.C. § 924(e)(2)(B)(i), is identical or substantially similar to the force clauses found in 18 U.S.C. § 16, 18 U.S.C. § 924(c)(3), and the career offender guidelines; and the First Circuit has interpreted all of these statutes to have the same definition of "physical force." *See Whyte v. Lynch*, 807 F.3d 463, 468 (1st Cir. 2015), *reh'g denied*, 815 F.3d 92 (1st Cir. 2016) (ana-

lyzing 18 U.S.C. § 16); *United States v. Taylor*, 848 F.3d 476, 491 (1st Cir. 2017) (analyzing 18 U.S.C. § 924(c)(3)); *United States v. Fields*, 823 F.3d 20, 35 (1st Cir. 2016) (analyzing the career offender guidelines). Thus, the Court will treat any decision interpreting the force clause in any of these statutes the same as if it directly interpreted the ACCA's force clause.

Docket No. 68. He argues that this conviction does not constitute a "violent felony" under the ACCA's force clause because second degree murder: (1) can be committed in "non-violent" ways, such as by poison, guile, deception, or omission, *id.* at 7–9; (2) can be committed with a reckless *mens rea*, *id.* at 5–7; and (3) can rest on a theory of accomplice liability, *id.* at 7–8. The Court disagrees.

The Court begins by outlining why recent caselaw, particularly the case of *United States v. Castleman*, —— U.S. ——, 134 S.Ct. 1405, 188 L.Ed.2d 426 (2014), dictates that second degree murder categorically requires the "use of physical force." Then the Court explains why none of Defendant's arguments warrant a contrary conclusion.

### A. The "Use of Physical Force"

■ The Puerto Rico second degree murder statute categorically requires the "use of physical force" under the ACCA. At the time Defendant was convicted, the Puerto Rico Penal Code defined murder as "the killing of a human being with malice aforethought."[3] P.R. Laws Ann. tit. 33, § 4001 (repealed June 18, 2004); *see Pueblo v. Rivera Alicea*, 125 D.P.R. 37, 44, 1989

WL 608548, slip official translation at 4 (P.R. Dec. 19, 1989)[4]. The Penal Code then specifically enumerated what constituted first degree murder before stating "[a]ll other murders shall be deemed as second degree murders." P.R. Laws Ann. tit. 33, § 4002 (repealed June 18, 2004).[5] As such, second degree murder is any unlawful killing with malice aforethought that is not first degree murder.

■ The conduct element of second degree murder—the unlawful killing of a human being—necessarily requires physical force. In the ACCA context, " 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140, 130 S.Ct. 1265. To kill someone means "[t]o end life; to cause physical death." Black's Law Dictionary 1002 (10th ed. 2014). It can hardly be denied that an unnatural death is a type of physical injury—in fact it is the ultimate physical injury. *Cf. Umana v. United States*, No. 08 CR 134, 229 F.Supp.3d 388, 393, 2017 WL 373458, at *4 (W.D.N.C. Jan. 25, 2017) (" 'an unlawful killing'—necessarily requires physical injury to the body of another person, even if the injury is no more

---

3. Before 1974, the statute described murder as an "unlawful killing." *Pueblo v. Ortiz Gonzalez*, 11 P.R. Offic. Trans. 503, 506–07, 111 D.P.R. 408 (P.R. 1981). However, the Puerto Rico Supreme Court made clear that the removal of the term "unlawful" had no juridical consequence, as any killing in murder is unlawful. *Id.* Thus, for purposes of clarity, this Court will interpret the statute as covering only *unlawful* killings.

4. The electronic version of this case's official translation has no pincites. Therefore, the Court will cite to the slip official translation when citing a specific page.

5. The statute specifically stated:
Murder in the first degree shall be:
(a) Any murder perpetrated by means of poison, lying in wait or torture, or any willful, deliberate and premeditated killing, or which is committed while perpetrating or attempting to perpetrate aggravated arson, rape, sodomy, robbery, carjacking, burglary, kidnapping, mayhem, mutilation or escape.
(b) Causing the death of a member of the Police, a member of the Municipal Guard, a Penal Guard, or a member of the National Guard while substituting or supporting the Police, when any of these persons is acting in the performance of their duties and their death is the result of the commission or attempted commission of a felony or the concealment thereof.
All other murders shall be deemed as second degree murders.
P.R. Laws Ann. tit. 33, § 4002 (repealed June 18, 2004).

than cessation of that person's heart."). Thus, if a person causes the unlawful death of another person, they have caused physical injury, and causing physical injury "categorically involves the use of force capable of causing physical pain or injury to another person." *See United States v. Castleman,* —— U.S. ——, 134 S.Ct. 1405, 1417, 188 L.Ed.2d 426 (2014) (Scalia, J., concurring) (internal citations and quotation marks omitted). Therefore, second degree murder categorically requires the use of physical force. *See also United States v. Checora,* 155 F.Supp.3d 1192, 1197 (D. Utah 2015) ("It is hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed.").

Defendant argues otherwise, primarily positioning that second degree murder can be committed in "nonviolent" ways, such as by poison, guile, deception, or deliberate omission; thus, Defendant contends that second degree murder does not categorically require the use of physical force. Docket No. 104–1 at 7. But this argument is contradicted by the Supreme Court's recent interpretation of what constitutes the "use" of physical force. *Castleman,* 134 S.Ct. at 1405.[6]

In *Castleman,* the Court held that a defendant convicted of intentionally or knowingly causing bodily injury to the mother of his child had been convicted of a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). *Id.* at 1408. Similar to the force clause of an ACCA

"violent felony," a "misdemeanor crime of domestic violence" is defined as "an offense that ... has, as an element, *the use or attempted use of physical force.*" *Id.* § 921(a)(33)(A)(ii) (emphasis added). In arriving at its holding, the *Castleman* Court examined the meaning of the "*use* of physical force," as well as the relationship between "injury" and "physical force." *Castleman,* 134 S.Ct. at 1414–15 (emphasis added).

The Court began by stating that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *Id.* at 1414. The Court specifically rejected the argument, adopted by the district court, that one could cause bodily injury without the "use of physical force," by, for example, "deceiving [the victim] into drinking a poisoned beverage, without making contact of any kind." *Id.* at 1414–15 (brackets in original) (internal quotation marks omitted). The Court clarified that " 'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.' " *Id.* at 1414 (quoting *Johnson I,* 559 U.S. at 138, 130 S.Ct. 1265). Then, the Court made clear that the "use of physical force" can occur indirectly, as well as directly:

> [T]he knowing or intentional application of force is a 'use' of force.... The 'use of force' in Castleman's example is not the act of sprinkling the poison; *it is the act of employing poison knowingly as a device to cause physical harm. That the*

---

6. In addition, Defendant puts forth no concrete example or realistic possibility of a second degree murder conviction based on guile, deception, or omission. This Court should not rely solely on its " 'legal imagination' in positing what minimum conduct could hypothetically support a conviction under [a statute.]" *See Whyte,* 807 F.3d at 467 (quoting *Gonzales,* 549 U.S. at 193, 127 S.Ct. 815). A defendant must "at least point to his own case or other cases in which the state courts in fact did apply the statute in the [] manner for which he argues." *Gonzales,* 549 U.S. at 193, 127 S.Ct. 815. Defendant makes no such showing here. Thus, in the alternative to the analysis below, the Court finds that Defendant has not sufficiently shown that a second degree murder conviction may rest on guile, deception, or omission.

*harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.* Under Castleman's logic, after all, one ·could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim.

*Id.* at 1415 (internal citations omitted) (emphasis added).

*Castleman's* reasoning makes clear that second degree murder requires the "use of physical force." Similar to how the *Castleman* Court found that one cannot cause bodily injury without the "use of physical force," *id.* at 1414, one cannot cause an involuntary death—a severe type of bodily injury—without the "use of physical force." *See Checora,* 155 F.Supp.3d at 1198 ("Similarly, this court concludes that it is impossible to cause death without applying physical force ·as explained in *Castleman.*"). Regardless of the means used, someone who murders has caused the ultimate physical harm. As *Castleman* elucidates, it is irrelevant whether that harm occurs directly or indirectly, as the "use of force" occurs anytime someone knowingly employs a device to cause physical harm. 134 S.Ct. at 1415. Even if a defendant commits murder without the direct use of force, such as by poison, guile, deception, or deliberate omission, a defendant would still necessarily use "a device to cause physical harm," i.e. death, just as Castleman "employ[ed] poison knowingly as a device to cause physical harm." *Id.; see United States v. Waters,* 823 F.3d 1062, 1066 (7th Cir.) ("Likewise, withholding medicine causes physical harm, albeit indirectly, and thus qualifies as the use of force under *Castleman.*"), *cert. denied,* —— U.S. ——, 137 S.Ct. 569, 196 L.Ed.2d 448 (2016). Thus, second degree murder categorically requires the "use, attempted use, or threatened use of physical force."

Defendant argues that *Castleman* is not determinative here because the Supreme Court explicitly limited its holding to the context of a "misdemeanor crime of domestic violence" under 18 U.S.C. ·§ 922(g). Docket No. 128 at 11. Defendant points out that *Castleman* defined physical force more broadly in the context of § 922(g) than how it is defined in the ACCA context. *Id.* at 11–12. Specifically, he argues that the physical force in § 922(g) includes the common-law definition of force, which can be satisfied by a mere offensive touching, unlike the ACCA definition. *Id.* Therefore, Defendant argues that unlike in *Castleman,* "the indirect application of force, including the causation of death by tricking a victim into ingesting poison, does not require the use, attempted use or threatened use of physical force." *Id.* at 11. The Court disagrees.

The majority of post-*Castleman* courts that have considered this argument have rejected it; instead extending the relevant *Castleman* analysis to statutes that have the same definition of "physical force" as the ACCA. *See, e.g., In re Irby,* 858 F.3d 231, 234–39 (4th Cir. 2017) (holding that *Castleman* makes clear that second-degree retaliatory murder is a "crime of violence" under § 924(c)'s force clause); *United States v. Rice,* 813 F.3d 704, 705–06 (8th Cir.), *cert. denied,* —— U.S. ——, 137 S.Ct. 59, 196 L.Ed.2d 59 (2016) (holding, in the context of the sentencing guideline's force clause, that *Castleman* resolves that a person "uses physical force in causing an injury through indirect means."); *United States v. Waters,* 823 F.3d 1062, 1065 (7th Cir.), *cert. denied,* —— U.S. ——, 137 S.Ct. 569, 196 L.Ed.2d 448 (2016) (citing *Castleman* to reject the argument, in the context of the sentencing guideline's force clause, that one can cause injury to another person without using physical force); *United States v. Moreno–Aguilar,* 198 F.Supp.3d 548, 553 (D. Md. 2016) (stating that the

*Castleman* decision "foreclosed any argument that the term 'physical force' [in the ACCA context] does not include murder by poisoning"); *Checora,* 155 F.Supp.3d at 1198 (applying *Castleman* to hold that second degree murder constitutes a "crime of violence" under § 924(c)'s force clause); *United States v. Bell,* 158 F.Supp.3d 906, 918 (N.D. Cal. 2016) (holding that *Castleman*'s analysis regarding the indirect use of physical force applies equally to the § 924(c) context).

These courts have extended *Castleman* for good reason. Although *Castleman* did provide that the *degree* of physical force required under the ACCA is higher than that required for a "crime of domestic violence" under § 922(g), *see* 134 S.Ct. at 1410–13, the relevant portion of *Castleman* was not focused on the requisite degree of physical force, but rather on what it means to "use physical force," *see id.* at 1414–15. Since there is no material distinction between § 922(g) and the ACCA in this regard, *see Bell,* 158 F.Supp.3d at 918, *Castleman*'s holding that one can "use physical force" indirectly, such as by employing poison, applies equally in the ACCA context.[7] Using *Castleman*'s definition of the "use of physical force," it becomes evident that the causation of bodily injury necessarily involves the "use of physical force" "since it is impossible to cause bodily injury without using force capable of producing that result." *See, e.g., Rice,* 813 F.3d at 706 (quoting *Castleman,* 134 S.Ct. at 1416–17 (Scalia, J., concurring) (internal quotation marks omitted)); *In re Irby,* 858 F.3d at 236 ("*Johnson* [I] and *Castleman* make it pellucid that second-degree retaliatory murder is a crime of violence because unlawfully killing another human being requires the use of force 'capable of causing physical pain or injury to another person.'") (internal citation omitted).

The Fifth Circuit, on the other hand, recently held that *Castleman* did not warrant reconsidering previous decisions holding that a person could cause physical injury without using physical force. *See United States v. Rico–Mejia,* 859 F.3d 318, 321 (5th Cir. 2017).[8] However, the Fifth Circuit's only reasoning for this decision was one paragraph noting that *Castleman*'s holding only applied to "misdemeanor crimes of domestic violence," which carried a broader definition of "physical force" than the crime of violence context.

---

7. The distinction between what constitutes the "use of physical force" and the degree of physical force required by the two definitions is best illustrated with an example. Consider two scenarios where someone tricks a victim into drinking a noxious liquid. The liquid in the first scenario simply causes its drinker to fall asleep, whereas the second liquid is a potent poison capable of causing death. Under *Castleman,* both scenarios constitute the "use of" some degree of physical force, since in both there was "force exerted by and through concrete bodies," 134 S.Ct. at 1414 (quoting *Johnson I,* 559 U.S. at 138, 130 S.Ct. 1265), and both liquids are knowingly being used as a device to cause physical harm, *see id.* at 1415. However, the degree of physical force used is clearly different. The second scenario constitutes a "use of physical force" under the ACCA since the degree of physical force is "capable of causing physical pain or injury to another person." *Johnson I,* 559 U.S. at 140, 130 S.Ct. 1265. However, it is doubtful that the first scenario would satisfy the ACCA definition of "physical force," even though it might constitute "physical force" under § 922(g), because giving someone a liquid that causes bad breath may be an "offensive touching."

8. One such decision states that "a defendant could violate [the statute], for example, by threatening either to poison another or to guide someone intentionally into dangerous traffic, neither of which involve 'force', as that term is defined by our court." *United States v. De La Rosa–Hernandez,* 264 Fed.Appx. 446, 449 (5th Cir. 2008). This stands in direct contradiction to this Court's holding today.

*Id.* The court made no mention of the distinction between what constitutes a "use of physical force" versus the degree of physical force. Accordingly, this Court is not persuaded by the Fifth Circuit,[9] and instead finds the view of the Eighth, Fourth, and Seventh Circuits, as well as most district courts that have considered this issue, to be more persuasive.

The First Circuit's opinion in *Whyte v. Lynch*, 807 F.3d 463 (1st Cir. 2015), *reh'g denied*, 815 F.3d 92 (1st Cir. 2016) does not warrant a contrary conclusion. In *Whyte*, the First Circuit held that the petitioner's conviction for third-degree assault in Connecticut was a "crime of violence" under 18 U.S.C. § 16. *Id.* at 465. The relevant statute prohibited a person from intentionally causing "physical injury to another person." *See id.* at 467. The court stated that the statute's plain language gave no indication that the offense required "the use, threatened use, or attempted use of 'violent force.' " *Id.* at 468. The court added that "[c]ommon sense, moreover, suggests there exists a 'realistic probability' that, under this statute, Connecticut can punish conduct that results in 'physical injury' but does not require the 'use of physical force.' " *Id.* at 469 (internal citations omitted). As an example, the court stated that "a person could intentionally cause physical injury by 'telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim.' " *Id.* (quoting *United States v. Villegas–Hernandez*, 468 F.3d 874, 879 (5th Cir.2006)).

Although at first glance, the *Whyte* court seems to agree with the Fifth Cir-

cuit's approach, *Whyte* has no precedential value here because the court deemed waived the very argument this Court rests its holding on. *See United States v. DiPina*, 178 F.3d 68, 73 (1st Cir. 1999) (stating that the court is not bound by a prior decision where the court did not consider an issue directly). In *Whyte*, the government never argued that *Castleman* dictated that causing injury necessarily involves the "use of physical force." In fact, because the government raised this argument for the first time in its petition for rehearing, "the [c]ourt never considered it," and held that it was waived "[f]or purposes of this case only." *Whyte v. Lynch*, 815 F.3d 92 (1st Cir. 2016) (denying petition for rehearing). Furthermore, the First Circuit recently clarified that *Whyte* did not limit *Castleman*'s indirect causes analysis to the misdemeanor crime of domestic violence context. *United States v. Edwards*, 857 F.3d 420, 426–27 (1st Cir. 2017). Thus, the application of *Castleman* to the ACCA context is still an open question in the First Circuit.

When the First Circuit considers the issue properly, this Court believes it will agree with the approach taken by the majority of post-*Castleman* courts, and conclude that one cannot cause physical injury without the "use of physical force." As already discussed, this is the more persuasive view. Using the example the First Circuit borrowed from the Fifth Circuit, a person who intentionally causes someone to back into moving traffic "uses physical force" because he has "knowingly [used] a device to cause physical harm." *See Castleman*, 134 S.Ct. at 1415; *see also In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017) ("It is absurd to believe that Congress would

---

**9.** The Court notes that Defendant also cites other cases that have similarly held that one can cause physical injury without the "use of physical force." Docket No. 128 at 9. However, these cases were all decided before *Castle-* *man*. Since this Court holds that *Castleman* resolves this issue, these cases are irrelevant until they are reconsidered in light of *Castleman*.

have intended poisoners and people who use their wits to place someone in the path of an inevitable force to avoid the force clause . . . ."). That "use of physical force" rises to the ACCA level because it is "force capable of causing physical pain or injury to another person." *See Johnson I*, 559 U.S. at 140, 130 S.Ct. 1265. Accordingly, second degree murder, as defined by Puerto Rico law, categorically requires the "use of physical force" under the ACCA.

## B. Mens Rea

■ Defendant next argues that second degree murder does not have the requisite *mens rea* to qualify as a "violent felony" under the ACCA's force clause. The Court disagrees because the *mens rea* of "malice aforethought," as defined and interpreted by Puerto Rico law, is sufficient.

The Supreme Court has made clear that the "use of physical force" has a *mens rea* component. *Leocal v. Ashcroft*, 543 U.S. 1, 8–9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). In *Leocal*, the Court held that the "use of physical force" in the ACCA requires "a higher degree of intent than negligent or merely accidental conduct." *Id.* at 9, 125 S.Ct. 377. However, the Court did not state whether a *mens rea* of recklessness was sufficient. *Id.* at 13, 125 S.Ct. 377. In *United States v. Fish*, 758 F.3d 1, 9–10 (1st Cir. 2014), the First Circuit held, based on *Leocal*'s logic, that a crime requiring only a reckless *mens rea* could not qualify as a "crime of violence" pursuant to the residual clause of 18 U.S.C. § 16.

Defendant argues that a reckless *mens rea* is similarly insufficient for the force clause of the ACCA. Docket No. 104–1 at 6.[10] He further argues that second degree murder can be committed with a *mens rea* equivalent to criminal recklessness, and thus second degree murder cannot be a "violent felony" pursuant to the force clause. *Id.* at 5–6. The Government counters that second degree murder requires more than criminal recklessness since it requires a specific intent to kill. Docket No. 123 at 6–11. Neither party is correct. Although second degree murder does not require a specific intent to kill, the "malice aforethought" it requires is higher than mere recklessness.

The *mens rea* required for second degree murder, at the relevant time, was "malice aforethought." P.R. Laws Ann. tit. 33, § 4001 (repealed June 18, 2004); *Pueblo v. Rivera Alicea*, 125 D.P.R. 37, 45, 1989 WL 608548, slip official translation at 4 (P.R. 1989)[11]. The Puerto Rico Penal Code provided that "malice . . . denote[s] the commission of a damaging, intentional act, without justification or excuse and the conscious nature thereof." P.R. Laws Ann. tit. 33, § 3022(19) (repealed June 18, 2004). Article 15 of the Code further provided that:

Crime is intentional:

(a) When the result has been foreseen and wanted by the person as a consequence of his act or omission; or

10. The Court assumes *arguendo* that this is true. However, this issue is far from decided in the First Circuit, especially in light of the recent Supreme Court decision in *Voisine v. United States*, — U.S. —, 136 S.Ct. 2272, 195 L.Ed.2d 736 (2016). The *Voisine* Court held that a reckless use of force can constitute the "use of physical force" in the context of a "misdemeanor crime of domestic violence" under § 922(g). Multiple courts have extended this holding to the ACCA context. *See, e.g., United States v. Webb*, 217 F.Supp.3d 381, 397

(D. Mass. 2016). The First Circuit is currently considering the issue in *United States v. Bennett*, CA No. 16–2039 (1st Cir. filed Aug. 16, 2016). This Court takes no position on this issue.

11. The electronic version of the case's official translation has no pincites. Therefore, the Court will cite the slip official translation when citing to a specific page.

(b) When the result, though unwanted, has been foreseen or could have been foreseen by the person as a natural or probable consequence of his act or omission.

P.R. Laws Ann. tit. 33, § 3062 (repealed June 18, 2004). Defendant argues that the definition of intent in Article 15(b) allowed for a second degree murder conviction with a *mens rea* of only recklessness. Docket No. 128 at 4. The Court disagrees for two reasons.

First, relevant Puerto Rico Supreme Court precedent provides that criminal recklessness was, at the time, characterized by the *absence of malice*. *See Pueblo v. Castañon Perez*, 114 D.P.R. 532, 536–37, 14 P.R. Offic. Trans. 688, 693, 1983 WL 204175 (P.R. 1983). When Defendant was convicted of his prior crimes, the Puerto Rico Penal Code only criminalized conduct that was either intentional under Article 15, as defined above, or criminally negligent under Article 16.[12] P.R. Laws Ann. tit. 33, § 3061 (repealed June 18, 2004). In *Castañon Perez*, the supreme court explained which conduct fell in which category, stating that the Code classified offenses as "either intentional or willful; and *negligent or culpable, equivalent to reckless negligence.*" *See* 14 P.R. Offic. Trans. at 693 (emphasis added). Thus, the supreme court made clear that acts that are committed recklessly fall within the Code's definition of "negligence," not "intent." *Id.* The court further stated that "[a]bsence of malice constitutes the main key to characterize negligence." *Id.* Since reckless conduct falls within the Code's definition of "negligence," and "negligence" is charac-

terized by the absence of malice, then reckless conduct must also be characterized by the absence of malice. The logical corollary to this is that acts that *are committed with malice,* such as murder, do not fall into the Code's definition of negligence, which includes recklessness. Thus, second degree murder, which requires "malice aforethought," cannot be committed recklessly.

Second, the Puerto Rico Supreme Court has also interpreted "malice aforethought" to require a more perverse mental state than criminal recklessness. *See Rivera Alicea*, 125 D.P.R. at 45, slip official translation at 4; *Pueblo v. Rosario*, 160 D.P.R. 592, 2003 WL 22848956 (P.R. 2003)[13]. In *Rivera Alicea*, the supreme court stated that "[t]he concept of malice aforethought implies ... the existence of the intent to kill a fellow human being. The intent to kill may take place when an act is committed or serious bodily injury is inflicted, the probable consequence of which is the death of the person." 125 D.P.R. at 45, slip official translation at 4. The supreme court later clarified, in *Pueblo v. Rosario*, that unlike first degree murder, second degree murder only requires "malice aforethought ... without a specific intent to kill." 160 D.P.R. at 609–10 (certified translation at 11) (internal citations omitted). But the court added that this "refers to the intention to carry out an act or produce grievous bodily harm that will in all probability result in the death of a person." *Id.* at 610 (certified translation at 11–12) (internal citations omitted). The court also provided that any degree of murder "by its defini-

---

12. Article 16 stated the following concerning negligence: "[t]he person who brings about an unwanted criminal result through negligence or carelessness, or lack of circumspection or skill or through nonobservance of the law, is responsible for negligence." P.R. Laws Ann. tit. 33, § 3063 (repealed June 18, 2004).

13. The Court relied on the certified translation of this decision, which was filed at Docket No. 141.

tion and nature, entails an act that is *perverse, ill-intentioned, and contrary to the ethical and moral values of our society.*" *Id.* at 609 (certified translation at 11) (emphasis added). It denotes a mental state that is characterized by *"an inherent deficiency in [the actor's] sense of morality and righteousness* as a result of *having stopped caring about the respect and safety of human life."* *Id.* (certified translation at 11) (emphasis added) (internal citations omitted).

These cases use strong language to describe the mental state required for murder as a truly depraved and corrupt one. In turn, criminal recklessness lacks this element of moral deficiency; instead, only requiring a defendant to take an action while " 'consciously disregard[ing]' a substantial risk that the conduct will cause harm to another." *Voisine v. United States,* — U.S. —, 136 S.Ct. 2272, 2278, 195 L.Ed.2d 736 (2016) (quoting Model Penal Code § 2.02(2)(c)).[14] Thus, "malice aforethought" constitutes a more perverse *mens rea* than criminal recklessness. *See also Umana v. United States,* No. 08 CR 134, 229 F.Supp.3d 388, 395, 2017 WL 373458, at *5 (W.D.N.C. Jan. 25, 2017) (holding that " 'malice aforethought' requires a higher degree of intent than 'reckless' conduct"). Accordingly, "malice aforethought" is sufficient to satisfy the *mens rea* requirement of the ACCA's force clause.

### C. Accessorial Liability

■ Lastly, Defendant argues that second degree murder cannot constitute a "violent felony" under the ACCA's force clause because a second degree murder

conviction can rest on a theory of accomplice liability, such as "aiding and abetting murder, instigating murder, and accessory before the fact to murder." Docket No. 104–1 at 7–8. The Court disagrees.

The First Circuit rejected a similar argument in *United States v. Mitchell,* 23 F.3d 1, 2–3 (1st Cir. 1994). The *Mitchell* court stated that "aiding and abetting 'is not a separate offense' from the underlying substantive crime." *Id.* at 2 (quoting *United States v. Sanchez,* 917 F.2d 607, 611 (1st Cir. 1990), *cert. denied,* 499 U.S. 977, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991)). Thus, "[o]ne who aids and abets an offense is punishable as a principal, and the acts of the principal become those of the aider and abetter as a matter of law." *Id.* at 3 (1st Cir. 1994) (internal citations and quotation marks omitted). As a result, the court held that "aiding and abetting the commission of a crime of violence is a crime of violence itself." *Id.* Thus, whether one can commit an offense by aiding and abetting or any other theory of accomplice liability plays no role in determining whether that offense constitutes a "violent felony" under the ACCA.

Accordingly, this Court holds that second degree murder under Puerto Rico law constitutes a "violent felony" under the ACCA's force clause.

### III. Puerto Rico Attempted Murder

■ Attempted murder also constitutes a "violent felony" under the ACCA's force clause for essentially the same reasons as second degree murder. "[A]ttempted murder occurs when a person 'commits acts or [incurs] omissions unequivocally directed

---

**14.** Interestingly, the Model Penal Code also recognizes that murder requires a more perverse mental state than mere recklessness. *Compare* Model Penal Code § 210.2 ("criminal homicide constitutes murder when ... (b) it is committed recklessly under circumstances manifesting *extreme indifference to the value of human life."*) (emphasis added), *with* Model Penal Code § 210.3 ("Criminal homicide constitutes manslaughter when (a) it is committed recklessly; or ...."*).

to' cause the death of a human being with malice aforethought." *Pueblo v. Bonilla Ortiz*, 23 P.R. Offic. Trans. 393, 397, 123 D.P.R. 434, 1989 WL 607314 (P.R. 1989) (citing P.R. Laws Ann. tit. 33, §§ 3121, 4001 (repealed June 18, 2004)). Attempted murder requires a specific intent to kill. *Id.* Thus, all of the Court's conclusions as to second degree murder apply with equal or greater force to attempted murder.

The ACCA's force clause defines a "violent felony" as any crime that "has as an element the use, *attempted use,* or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added). Although attempted murder does not require the actual "use of physical force," it necessarily requires the "attempted use of physical force," as any act or omission "unequivocally directed to cause the death of a human being" done with the specific intent to kill "categorically involves the [attempted] use of force capable of causing physical pain or injury to another person." *See Castleman*, 134 S.Ct. at 1417 (Scalia, J., concurring). Accordingly, attempted murder also constitutes a "violent felony" under the ACCA's force clause.

As a final point, the Court cannot leave its common sense entirely at the door. *See Abramski v. United States*, — U.S. —, 134 S.Ct. 2259, 2267, 189 L.Ed.2d 262 (2014) (stating that common sense is a "fortunate side-benefit of construing statutory terms fairly"). It is hard to think of a more "violent felony" than murder or attempted murder. Thus, common sense further supports the Court's holding that these two crimes are ACCA predicate offenses. *See In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017).

Given this holding, the Court must sentence Defendant to the fifteen-year mandatory minimum under 18 U.S.C. § 924(e). Defendant has two convictions for attempt-

ed murder and one for second degree murder. Docket No. 68. As this makes three convictions for ACCA predicate offenses, the Court need not consider any of Defendant's other prior convictions.

## CONCLUSION

In view of the foregoing, Defendant will be re-sentenced to at least a fifteen-year imprisonment term pursuant to the ACCA. A re-sentencing hearing will be set shortly.

IT IS SO ORDERED.